## McDERMOTT v. BURKE et al.

*Query:* Whether a leasehold estate for a term of years is real property in such sense that a judgment docketed becomes a lien thereon.

A mortgagor cannot make a lease which will bind his mortgagee, where the lessee, at the time, has actual or constructive notice of the mortgage.

The interest of the lessee, in such case, depends for its duration—except as limited by the terms of the lease—upon the enforcement of the mortgage. So long as the mortgage remains unenforced, the lease is valid against the mortgagor, and, in this State, against the mortgagee; but with its enforcement, the leasehold interest is determined, even though the lessee be not made party to the foreclosure suit.

There is no privity of contract or estate between the purchaser upon the decree of sale on foreclosure and the tenant of the mortgagor. The purchaser may treat the tenant as an occupant without right, and maintain ejectment for the premises—except where the purchaser is precluded, by his acts or declarations, from thus taking him.

The purchaser cannot, for the want of privity, count upon the lease, and sue for the rent or the value of the use and occupation. The relation between the purchaser and tenant is that of owner and trespasser, until some agreement, expressed or implied, is made between them with reference to the occupation. The tenant is not bound to attorn to the purchaser, nor is the latter bound to accept the attornment, if offered, unless the acts or declarations of the purchaser, anterior to the purchase, qualify the subsequent relation of the parties, or the rights springing from it.

There are cases where the purchaser on a sale under a decree of foreclosure, would be estopped from treating the tenant of the mortgagor as a trespasser—as, for instance, when the lease was taken upon the encouragement of the mortgagee, and the purchaser was cognizant of the fact at the time of his purchase.

Only those who are beneficially interested in the claim secured, or in the estate mortgaged, are necessary parties to the foreclosure of a mortgage.

A tenant of the mortgagor is not interested either in the claim secured nor in the estate mortgaged—that is, in the title pledged as security. He has not succeeded to such estate, or to any portion of it. He does not stand in the position of a purchaser. The estate remains in his lessor; he has only a contingent right to enjoy the premises. The right of the lessor to the possession ends with the deed by which the sale of the premises is consummated; and the tenant's right to possession depends upon that of the lessor, and goes with it; and the tenant having notice, actual or constructive, of the mortgage, need not be made party to the foreclosure.

Possibly, a Court of Equity would, under some circumstances, allow a tenant for years to redeem the premises sold on foreclosure, if he applied within a reasonable period after becoming acquainted with the proceedings.

But the tenant has no such absolute right, from the mere fact of his tenancy, as to require him to be a party to the foreclosure, in order to vest the legal title in the purchaser under the decree.

APPEAL from the Sixteenth District.

Ejectment for premises situated in Calaveras County. The material facts appear in the opinion of the Court. The Court below submitted a series of questions to the jury, and upon their findings plaintiff moved for and obtained judgment for possession of the premises. Defendants appeal.

*A. C. Monson,* for Appellants.

I. The lease to Laforge was cancelled, and the property surrendered to the lessors on the sixteenth of March, 1858. Execution in the case of *Robinson et al.* v. *Laforge,* was not issued until May 20th, and not levied until May 27th, 1858. At this time Laforge had no interest in any lease from the company, and consequently respondent acquired no rights by his purchase. The judgment in the case of *Robinson et al.* v. *Laforge* was not a lien upon the leasehold interest of Laforge, because :

1. The record does not show that it was ever docketed; and 2. If docketed, it would not have been a lien, for a lease for years is not real but personal property.

II. The evidence shows that appellants were entitled to the possession, and being in possession the Court will not turn them out, and put respondent in possession.

III. It is only necessary to make those persons parties to a foreclosure who have the absolute, legal right to redeem. (6 Beav. 557 ; 2 Hilliard on Mort. 79, note *a.*)

IV. The parties entitled to redeem under our statute are :

McDermott *v.* Burke.

1. The judgment debtor, or his successor in interest; 2. A creditor having a lien by judgment or mortgage on the property sold.

V.    The lease from the Table Mountain Water Company to Laforge was not binding upon appellants, having been made subsequently to the execution of the mortgages under which they claim. The interest of Laforge became extinguished by the foreclosure and sale, and appellants had the right to treat him as a trespasser. (*Simers* v. *Saltus,* 3 Denio, 214; *Castlemen* v. *Belt,* 2 B. Mon. 157 ; 1 Hilliard on Mort. 140.)

*Robinson, Beatty & Heacock,* for Respondent.

I.    The first point in appellants' brief is, that whatever rights Laforge may have had under his lease he surrendered back to the company before the issuance of execution in favor of Robinson, Beatty, Botts and Sackett, and therefore he had no interest to be levied on under their execution. The respondent contends, on the contrary, that Robinson, Beatty, Botts and Sackett obtained a lien on Laforge's interest by means of their judgment, which was rendered October 19th, 1857, about five months before Laforge surrendered his lease.

This proposition is met by two answers on the part of appellants. The first is, that the judgment is not a lien until it is docketed, and the transcript does not show that this judgment was ever docketed.

It is true, the transcript does not show that the judgment was docketed, neither does it show that it was not docketed. Nor is there anything that shows that all the testimony is incorporated in the statement.

There is nothing in the grounds of appeal indicating that there was any question raised as to the docketing. There was no objection to the judgment, that it was irrelevant because it had not been docketed. In the absence of any statement that all the evidence is incorporated, and under the rule of presumption in favor of the action of the Court below, we must presume that the docketing was proved. Again, the statute expressly provides that as soon as the judgment is rendered, the clerk shall docket it. Even if there were no proof, (which we think cannot be presumed in this case) the legal presumption would be that the officer had done his duty, and docketed the judgment on the day it was rendered. (Pr. Act, sec. 204.)

II.    Another objection of appellants is, that a judgment when docketed is not a lien on a leasehold estate—that an estate for years is not real estate but personalty. We admit that a leasehold for years is, in some respects, treated as personal property. It goes to the adminis-

McDermott *v.* Burke.

trator, and not to the heir.   But this rule of the common law, determining what is real estate and what is personalty, cannot alter the plain meaning of our statute.   The statute, speaking of the docketed judgment, says it shall become a lien upon all the real property.   It does not use the common law term "real estate," which has a technical meaning, but uses the term "property," merely to distinguish between that species of property which is movable and that which in its nature is immovable.   (Sec. 204, Pr. Act.)

Section two hundred and nine of the same act shows that every interest in land, whatever may be the character of the term, is called in the statute real property.   The section referred to, says: "Upon a sale of real property, where the estate is less than two years, etc."   Here the statute clearly recognizes every interest in land, even an estate of less than two years, as an estate in real property.   The same section provides for redemption of all real property when the term is for more than two years.

The definition in the chapter on conveyances is of real estate and not of real property, as used in the Practice Act.   But even the definition of real estate in the chapter on conveyances (35 Wood's Dig. 104, sec. 35) does not exclude a term for years in lands and tenements.

III.   Appellants say that those parties only who would be entitled to redeem need be made parties to a foreclosure suit.   We do not dispute this, but we differ as to who would be entitled to redeem.

The foreclosure of a mortgage is an equitable proceeding, and it might be possible that a party would be entitled to redeem in equity who was not authorized to redeem under our statute concerning redemption of real estate sold under execution.

If A mortgages his estate for less than its value, (say that an estate worth $10,000 is mortgaged for $1,000, payable ten years after date, interest payable annually) and after the mortgage, leases the same estate, fails to keep down the interest, and the mortgagee files his bill to foreclose, there could be no doubt that equity would allow the tenant to redeem, and deduct the money paid from his rents.   For the time being the tenant is the owner, and as such, is entitled to redeem.   But the words of the statute "successor in interest," are broad enough to cover the case of a tenant.   He is successor in interest for the time being. But the statute was made expressly for redemption from execution sales. We must look to the practice of Courts of Equity for the rules as to mortgage redemption.

IV.    Appellants say that the lease made by the company to Laforge was not binding upon the mortgagee, because made subsequent to the execution of the mortgage.

This was the rule at common law, and is the rule whenever the mortgagor in possession (after covenant broken as to payment) is treated as, or held to be a tenant at will, a tenant by sufferance, or a *quasi* tenant at will.   In fact, whenever the mortgagee is entitled, without foreclosure, to the possession.   (*McGoodwin* v. *Stephenson*, 11 B. Mun. 21–2; *Patterson* v. *Carmal's Heirs*, 3 A. K. Marshall, 618.)

The rule in New York was formerly the same.   The case referred to by appellants' counsel, in 3 Denio, asserts that "after foreclosure and sale of mortgaged premises, in possession of a lessee of a mortgagor, under a lease subsequent to the mortgage, the lessee is considered a wrong-doer, and is not entitled to notice to quit; and against him an action of trespass will lie by the purchaser, for taking and carrying away the crops."   The Court refers to a case (8 Wend. 584) as authority for this position.   The case in 8 Wendell put it on the ground that the mortgagor (after failure to pay at maturity) is a mere tenant at will, liable to be turned out without notice, and having no right even to the emblements.   Such a tenant cannot make a lease to a sub-tenant.

The moment a sub-tenant enters he is a trespasser.   It is his entry which makes him a trespasser, and not the fact that he remains in possession after foreclosure.   The Court in 8 Wendell expressly holds that a purchaser, lessee, or any third person (making no difference between a purchaser and a tenant) from the mortgagor, has in New York just the same rights that the mortgagor has in England; that he may be treated by the mortgagee as a mere tenant at will; not entitled to a notice, and not entitled to emblements; and that he is subject at any time to be sued as a trespasser by the mortgagee.   It held that a mortgagor has no right to sell his interest after covenant broken, as to payment of debt secured by mortgage.   This was the rule at common law; was so held in England, and generally in America, in all actions in a Court of law; but in equity a different rule prevailed.

A mortgagor, after he fails to pay his debt at maturity, can neither sell nor lease his property; any one entering under the mortgagor in such case is a trespasser *ab initio*.   At least, he may be so treated by the mortgagee, (at his election) either before or after foreclosure.   He may bring his action of ejectment against such person, whether purchaser or tenant, without notice or demand of possession.   (1 Hilliard on Mort. Ch. 9, 119.)

McDermott *v.* Burke.

These cases, however, all go on the proposition that the fee of the estate is in the mortgagee. The case in 3 Denio, although decided after the law of New York, prohibited the action of ejectment in favor of the mortgagee, and confined his remedy to his bill in equity, still maintains the proposition that a Court of law in a collateral proceeding, or a proceeding between other parties in which the rights of a mortgagee are collaterally introduced, will maintain the old common law rights of the mortgagee to treat all persons as trespassers who enter upon the mortgaged premises under the mortgagor, after condition broken.

But this Court, in a case where that proposition was submitted, held the reverse. We refer to the case of *Haffley* v. *Maier*, 13 Cal. There a foreclosure was had against the mortgagee, and subsequently an ejectment was brought against one who held under the mortgagor before suit brought; and the Court held that the vendee of a mortgagor could not be evicted in ejectment, not having been made a party to the foreclosure; and no case can be found where a distinction is made between a vendee and a tenant. It would be a singular law that would allow a man to sell his estate, but prevent him from renting it; where the purchaser would be innocent, but the tenant a trespasser. The decision in *Haffley* v. *Maier* was the inevitable and legitimate result of the former ruling of this Court, establishing the doctrine that the mortgage does not pass the fee of the estate, but only creates a lien in favor of the mortgagee.

*A. C. Monson*, in reply.

I. Counsel for respondent attempt to argue that "real property" and "real estate" have different meanings. It is submitted that they mean one and the same thing, and that is, something in contradistinction to personal property. At common law a leasehold for years was personal property, and before it can be regarded as real property, in this State, it must be made so by statute.

II. "Successor in interest in the whole or any part of the property," as used in the statute, means a vendee or legatee, etc. It means one who succeeds to the whole interest which the judgment debtor had in the property, or in some portion of the property. It means one that takes the place which another has left, and sustains the like part or character. Where a judgment debtor has disposed of all his right and title to the property, or to a portion of the property, and has no longer any interest whatsoever in it, then the party who takes the place of the judgment debtor, and occupies the same relation to the property

38

which the judgment debtor had previously occupied, is a successor in interest. A tenant occupies no such position. He may be a successor in possession, but not a successor in interest.

III. It is not contended that a mortgagor in this State cannot lease mortgaged premises. He can do so even after default in payment, and his lessee cannot be treated as a trespasser by the mortgagee until foreclosure, sale and conveyance. At common law the lessee could be treated by the mortgagee as a trespasser before foreclosure, but in this State the mortgagee is considered as having only a chattel interest. The freehold remains in the mortgagor, but by foreclosure, sale and conveyance the purchaser acquires the title, and this relates back to the date of the mortgage. The interest of a lessee in possession under a lease made subsequent to the mortgage, is extinguished by the foreclosure and sale. (*Simers* v. *Saltus*, 3 Denio, 216, 219.) Counsel for respondent are mistaken, in saying that the Court, in this case, maintains the old common law right of the mortgagor to treat all persons as trespassers who enter upon the mortgaged premises under the mortgagor after condition broken. The Court holds no such thing; it merely holds that after foreclosure and sale, and not until then, a lessee of a mortgagor under a lease subsequent to the mortgage can be considered a wrong-doer. *Haffley* v. *Maier* does not conflict with the case of *Simers* v. *Saltus*. In that case this Court held that a vendee of the mortgagor could not be ousted from possession by a purchaser under a decree of foreclosure and sale, unless such vendee was made a party to the foreclosure suit. And why? Because he was the successor in interest of the mortgagor, and neither he nor the estate, which he had acquired from the mortgagor, could be bound by a decree without making him a party to the foreclosure suit. To be affected by the decree, it was necessary and indispensable to make him a party. He had the legal right to redeem. A tenant has no such absolute right. Counsel say it would be a strange law that would allow a man to sell his estate, but prevent him from renting it; where the purchaser would be innocent, and the tenant a trespasser. This is admitted. The Court is not asked to hold any such doctrine. A man may both sell his estate, and rent it after he has mortgaged it. To extinguish the rights of a purchaser, he must be made a party to the foreclosure suit, because he has succeeded to the rights and the estate of the mortgagor, and he has the legal right to redeem. To extinguish the rights of the tenant, there must be a foreclosure and sale;

but he is not a necessary, indispensable party to the suit, for he is not "the successor in interest" of the mortgagor, nor has he a legal right to redeem.   Under certain circumstances, a Court of Equity might permit a lessee for years to redeem, but he has no such absolute right as to make him a necessary party to the foreclosure suit.   To adopt such a rule would be vexatious, productive of great delay and inconvenience, and cause unnecessary expense.   If he be a necessary party, then he must be made a party in all cases, no matter how short his term ; and all parties occupying the property as tenants must be made parties, no matter how numerous.   The vexation, inconvenience and delay which would follow are readily seen.   Then the costs would have to be paid out of the mortgaged premises, and where the tenants are numerous these might entirely exhaust the proceeds.   Only those, it is submitted, are necessary parties who have the legal, unqualified right to redeem.   These are mentioned in the two hundred and thirtieth section of the Practice Act.   A tenant for years has a mere equitable right to redeem under certain circumstances.   A Court of Equity would not permit him to redeem if the redemption was merely frivolous and for vexation.   (See the remarks of the Court in *Averill* v. *Taylor*, 4 Selden, 53.)   The legal title to the possession of a tenant for years is extinguished by a foreclosure and sale, where he is not made a party ; but his right to apply to a Court of Equity for protection is not extinguished.   A Court of Equity, however, before affording him relief, would require that he should at least offer to do equity. It would not permit him to hold the possession without offering to pay the mortgage debt.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. concurring.

In November, 1855, the Table Mountain Water Company, a corporation created under the laws of this State, executed to Laforge a mortgage upon certain property, situated in Calaveras county, to secure the payment of its promissory note of the same date.   In January, 1856, Laforge assigned the note and mortgage to Rowe.   On the sixth of October following, Rowe instituted suit for the foreclosure of the mortgage, making the company the sole party defendant, and in February, 1857, recovered a personal judgment for the principal and interest due, and a decree for the sale of the premises.   Under this decree the premises were sold, in August, 1857.   At the sale, Bowman and Hughes

McDermott *v.* Burke.

became the purchasers, received the Sheriff's certificate, and in March, 1858, no redemption having been made, the Sheriff's deed. During the same month, Bowman sold and conveyed to Burke his undivided interest in the premises. Burke and Hughes, two of the defendants in the present action, thus became joint owners—as tenants in common—of the entire property, unless the interest of the company, covered by the mortgage, had been transferred so as to be unaffected by the decree rendered.

The only interest alleged to have been thus transferred, was that created by the lease executed by the company to Laforge on the twenty-first of October, 1856. This lease was for the term of five years, commencing on the first of November subsequent to its date, and under it Laforge entered upon the premises. In April, 1858, Burke and Hughes brought an action against the company and Laforge to obtain possession of the property, basing their right to a recovery upon the mortgage, and the sale and conveyance under the decree foreclosing the same. Both defendants answered, Laforge setting up the lease referred to, and insisting that his estate thereunder was not affected by the proceedings in the foreclosure suit, as he was not made a party thereto. The action was tried by the Court, and it found that the company was in possession of the premises at the commencement of the action, and continued in such possession; and that Laforge, by a written contract with the company, made on the sixteenth of March, 1858, had surrendered the property and all his rights to the same under the lease. It, therefore, rendered judgment in favor of the plaintiffs, and upon a writ issued thereon, they were placed in possession. Their codefendants claim under other proceedings upon an alleged second mortgage of the company to Treat, but we do not deem it at all material, for the disposition of the present action, to consider the source, nature or extent of their interests.

In October, 1857, Robinson and others recovered a personal judgment against Laforge, and on the twentieth of May, 1858, issued execution thereon, under which the Sheriff levied upon whatever interest Laforge possessed from the lease of the company, and in June following sold the same. At the sale, McCall became the purchaser, and received the Sheriff's certificate, and assigned the same to the plaintiff, to whom the Sheriff executed his deed. Several questions are presented by the defendants as to the regularity of the proceedings of the Sheriff, and the sufficiency of the proof as to the assignment of the certificate; but we do not propose to pass upon them. We shall assume, for the pur-

McDermott *v.* Burke.

poses of the present, action, that the proceedings of the officer were reg-
ular, and that the assignment was sufficiently established.   The plaintiff
claims, by the judgment sale and Sheriff's deed, to have succeeded to
the leasehold interest of Laforge, and to be consequently entitled to the
possession of the premises until the expiration of the term.

This claim is conclusively met by the fact that, at the time of the
Sheriff's levy under the execution, the lease had been surrendered by
Laforge.   He then possessed no interest which could be the subject of
levy and sale.   It does not appear that the judgment had been dock-
eted, so as to become a lien upon any real property possessed by
Laforge—even if a leasehold estate for a term of years can be deemed
real property in such sense that a judgment can become a lien thereon.
We do not, however, rest our decision upon this point.   We are of
opinion that the legal rights of the lessee were extinguished by the
proceedings in the foreclosure suit and sale following the decree thereon.
A mortgagor cannot make a lease which will bind his mortgagee, where
the lessee at the time had notice of the. mortgage, either actual or con-
structive.   The interest of the lessee in such case is dependent for its
duration, except as limited by the terms of the lease, upon the enforce-
ment of the mortgage.   So long as the mortgage remains unenforced,
the lease is valid against the mortgagor, and in this State against the
mortgagee ; but with its enforcement the leasehold interest is determ-
ined.   There is no privity of contract or of estate between the pur-
chaser upon the decree of sale and the tenant.   The purchaser may,
therefore, treat the tenant as an occupant without right, and maintain
ejectment for the premises.   He cannot, for the want of such privity,
count upon the lease, and sue for the rent or the value of the use and
occupation.   The relation between the purchaser and tenant is that of
owner and trespasser, until some agreement, express or implied, is
made between them with reference to the occupation.   Until then, both
are equally free from any contract obligations to each other.   The ten-
ant is not bound to attorn to the purchaser, nor is the latter bound to
accept the attornment, if offered.   The purchaser may prefer to have
the possession, and the tenant may also prefer to surrender it.   We
are speaking now of cases where the purchaser is not precluded, by
his acts or declarations, from the assertion of any rights consequent
upon the purchase.   There are cases, undoubtedly, where the purchaser
would be estopped from treating the tenant of the mortgagor as a tres-
passer ; as, for instance, where the lease was taken upon the encour-

agement of the mortgagee, and the purchaser was cognizant of the fact at the time of his purchase. We are speaking of the law which is applicable where no circumstances anterior to the purchase have intervened to qualify the subsequent relation of the parties or the rights springing from it. (*Simers* v. *Saltus*, 3 Denio, 219; *McKircher* v. *Hawley*, 16 Johns. 292; *Castleman* v. *Belt*, 2 B. Monroe, 157; *Keech* v. *Hall*, 1 Doug. 21; *Pope* v. *Biggs*, 9 Barn. & Cress. 254; *Doe* v. *Bucknell*, 8 Car. & Payne, 567; *Partington* v. *Woodcock*, 6 Adol. & Ellis, 695.)

The error of the plaintiff arises from a misapprehension of the rule as to the parties necessary to the foreclosure of a mortgage. The rule only requires, as parties, those who are benficially interested in the claim secured or in the estate mortgaged. The tenant is not thus interested in the claim; he is not entitled to its proceeds when collected, or to any portion of the proceeds. Nor is he thus interested in the estate mortgaged—that is, in the title which is pledged as security. He has not succeeded to such estate, or to any portion of such estate. He does not stand, therefore, in the position of a purchaser. The estate remains in his lessor; he has only a contingent right to enjoy the premises. The right of the lessor to the possession ends with the sale of the premises, or rather, with the deed by which the sale is consummated. The right of the tenant to such possession depends upon that of the lessor, and goes with it.

We do not intend to determine that there are not cases in which a Court of Equity would allow a tenant for years to redeem the premises sold upon a foreclosure. We only affirm that he has no such absolute right, from the mere fact of his tenancy, as to require his presence to the vesting of the legal title in the purchaser under the decree foreclosing the mortgage. It is possible that he may have, under some circumstances, a claim to the consideration of a Court of Equity, upon offering to redeem, and on applying for relief within a reasonable period after becoming acquainted with the proceedings. It is clear that he cannot, without the interposition of equity in the matter, resist the right of the purchaser to the possession; much less can he, when out of possession, maintain ejectment for the premises; and the party succeeding to his interest, standing in his shoes, has no greater rights.

It follows that the judgment of the District Court must be reversed, and that Court directed to enter judgment for the defendants; and it is so ordered.